# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| JOSE HERNANDEZ-BLANCO and | ) | |
| DAVID HERNANDEZ-GOMEZ, | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-26-278-R** |
| | ) | |
| WARDEN, Dr. Scarlet Grant, et al., | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Jose Hernandez-Blanco, a noncitizen[1] and Salvadoran national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 5.[2] The undersigned set an expedited briefing schedule. Doc. 9. Respondents timely filed a Response, Doc. 11, and Petitioner did not file a Reply. For the reasons set forth below, the undersigned recommends the Court grant the Petition, Doc. 1, in part and order

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] On February 26, 2026, the Court entered an order consolidating this action with *Hernandez-Gomez v. Grant*, No. CIV-26-282-G. Doc. 6. On February 27, 2026, the Court *sua sponte* added the Attorney General of the United States and the Secretary of Homeland Security as party respondents to this action. Doc. 7. The undersigned is simultaneously filing a separate Report and Recommendation for petitioner David Hernandez-Gomez, with a similar recommendation for relief.

Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days or otherwise to release him if there is no hearing within that time.

## I.    <u>Background</u>[3]

Petitioner, a citizen of El Salvador, entered the United States near Hidalgo, Texas on or about November 22, 2016, without admission or inspection.  Resp. at 8.  On November 23, 2016, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through a Notice to Appear and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  *Id.*  At some point, Petitioner was released from immigration custody.  Pet. at 2.  On January 14, 2019, he filed an Application for Asylum and for Withholding of Removal.  Resp. at 8.  On November 30, 2022, an Immigration Judge ("IJ") ordered Petitioner removed to El Salvador.  Pet. at 4-5; Resp. at 8.  Petitioner appealed the removal order on December 8, 2022.  Pet. at 5.  The appeal remains pending.  *Id.*; Resp. at 8.

On January 20, 2026, ICE re-detained Petitioner.  Pet. at 4; Resp. at 7.  ICE detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).  Resp. at 10.  It is unclear from the briefing whether Petitioner has had an opportunity to request a bond hearing.  Even if requested, Petitioner was likely denied release because all IJs are subject to the binding precedent of

---

[3] Petitioner does not allege an extensive factual history in his Petition.  Respondent alleges additional background facts about Petitioner's prior immigration history based on ICE records.  Resp. at 8.

*Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds that those who entered the country without admission or parole are ineligible for a bond hearing.

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma.  Pet. at 1; Resp. at 8.  He remains detained there.  *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Mar. 17, 2026).

## II.    Petitioner's Claims

Petitioner asserts three counts in his Petition.

- **Count I: Violation of the Immigration and Nationality Act ("INA").**  Petitioner alleges a statutory violation of the INA and that ICE failed to follow its own policy and procedures. Pet. at 6.

- **Counts II and III: Violation of Due Process**.  Petitioner alleges his arrest and detention pending appeal are arbitrary, unlawful, and violate the Due Process Clause of the Fifth Amendment.  *Id.*

He asks the Court to order his immediate release or, alternatively, or order Respondents to provide him "a bond hearing where ICE would have the burden of proof that [he is] a flight risk or a danger to the public."  Pet. at 7.  Petitioner also seeks appointment of counsel.  *Id*.

## III.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

IV.    <u>Analysis</u>

A.    **The Court has jurisdiction to consider the Petition.**

Respondents first argue this Court lacks jurisdiction to consider Petitioner's claims, based on 8 U.S.C. §§ 1252(g) and 1252(b)(9).  Resp. at 10-13.  However, this Court and other Judges of the District have consistently ruled the INA "does not jurisdictionally bar" a habeas claim like Petitioner's because such a claim does not arise from and "does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders."  *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *2 (W.D. Okla. Dec. 16, 2025); *see also Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026) (same); *Alvarado Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *4-5 (W.D. Okla. Dec. 26, 2025) (same); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025) (same); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *2 (W.D. Okla. Dec. 8, 2025) (same); *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *1 (W.D. Okla. Nov. 20, 2025) (same).  *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026) (expressing "grave doubts over whether it has subject matter jurisdiction" but assuming it had jurisdiction to proceed to the merits).  The undersigned agrees with this Court and the majority of Judges of this District in finding jurisdiction exists to consider Petitioner's habeas challenges to detention.

B.    **Section 1226(a) applies to Petitioner's detention.**

The two sections of the INA at issue are 8 U.S.C. §§ 1225 and 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States

4

who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."

On the other hand, Section 1226(a) authorizes detention of a noncitizen "on a warrant issued by the Attorney General" pending removal proceedings. *Id.* § 1226(a) (citation modified). A noncitizen detained under § 1226(a) is entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

If Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing. If he is not an "applicant for admission" and "seeking admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing. Petitioner argues he is being held in violation of the INA and ICE's own policies and procedures. Pet. at 6. According to Petitioner, his arrest and detention after being previously released are unlawful. Pet. at 2. Respondents contend that Petitioner is an "applicant for admission" and therefore properly detained under § 1225(b)(2)(A). Resp. at 10. Further, Respondents claim (1) § 1225(b)(2)(A) is not limited to noncitizens "arriving" in the United States, (2) all

5

applicants for admission that are not subject to expedited removal fall under § 1225(b)(2)(A), and (3) § 1226(a) is reserved for those who do not fall within the confines of § 1225(b)(2)(A).  Resp. at 4-7.

The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue.  Notably, this Court and four other Judges in the District have recently applied § 1226(a) to habeas petitioners similarly situated to Petitioner.  *See Morocho v. Kelly*, No. CIV-25-1247-R, 2026 WL 36452, at *3 (W.D. Okla. Jan. 6, 2026); *see also Gonzalez Cortes*, 2026 WL 147435, at *7; *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Colin*, 2025 WL 3645176, at *5; *Urbina Garcia*, 2025 WL 3516071, at *4.[4]  Two Judges in the District have applied § 1225(b)(2)(A).  *See Gutierrez Sosa*, 2026 WL 36344, at *3 (finding "§ 1225 unambiguously applies to [a similarly situated] Petitioner's case"); *Alvarado Montoya*, 2025 WL 3733302, at *12 (finding that "§ 1225 unambiguously deems Petitioner an 'applicant for admission' who is 'seeking admission'").  The undersigned agrees with this

---

[4] Some Judges in this District, including this Court, have found analysis about the title, purpose, and historical interpretation was not necessary because § 1225 unambiguously does not apply to those petitioners.  *See, e.g., Valdez*, 2025 WL 3709021, at *3 n.1 (concluding "that the plain language of § 1225 does not apply to Petitioner" so "there is no need to address Respondents' arguments regarding the title, purpose, and historical interpretation" of § 1225); *Urbina Garcia*, 2025 WL 3516071, at *3 n.4 (same); *Escarcega*, 2025 WL 3243438, at *3 (same).  Judge Palk, on the other hand, generally agreed with analysis like this Report and Recommendation—that the statutory text, legislative history, and past practice also support a finding that Petitioner's detention is governed by § 1226(a) and not § 1225(b)(2).  *Gonzalez Cortes*, 2026 WL 147435, at *4-7.

Court's prior rulings, the majority of Judges in this District, and the great weight of authority to conclude Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A). Accordingly, the undersigned recommends that the Court conclude Petitioner is entitled to a bond redetermination hearing under § 1226(a).

**1.     Statutory interpretation of § 1225(b)(2)(A) and § 1226(a)**

When interpreting a statute, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* (citation modified). "So when deciding whether the language is plain, the Court must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (citation modified).

At issue is whether "an applicant for admission" who is "seeking admission" includes a noncitizen like Petitioner, who was living in the United States when detained. 8 U.S.C. § 1225(a)(1). The statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the noncitizen has already entered and has been residing in the United States. Even when statutory terms are unambiguous, context still matters. *See United States v. Bishop,* 412 U.S. 346, 356 (1973) ("Context is important in the quest for [a] word's meaning." (citation modified)); *United States v. Ceballos-Martinez,* 387 F.3d 1140, 1144 (10th Cir. 2004) (noting that statutory interpretation "requires [courts] to interpret Congress's choice of words in the context that

it chose to use them"). Further, "it is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation modified). When considering the INA's overall context, the undersigned concludes the statute limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).

As relevant here, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Chief Judge DeGuisti recently held "that § 1225(b)(2)(A) unambiguously requires that an 'applicant for admission' also be 'seeking admission' for the section to control," and "noncitizens 'seeking admission' are those who have not effected an entry into the United States." *Colin*, 2025 WL 3645176, at *4 (citation modified). This Court similarly ruled that § 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States." *Valdez*, 2025 WL 3709021, at *3; *see also Morocho*, 2026 WL 36452, at *3 (same); *Colin*, 2025 WL 3645176, at *4-5, *Escarcega*, 2025 WL 3243438, at *2 (same). Numerous Judges in this District further ruled that if all "applicants for admission" are also "seeking admission," then § 1225(b)(2)(A)'s inclusion of the phrase "seeking admission" would be redundant and superfluous. *Gonzalez Cortes*, 2026 WL 147435, at *3; *Morocho*, 2026 WL 36452, at *2; *Valdez*, 2025 WL 3709021, at *3; *Colin*, 2025 WL 3645176, at *4. "Courts should avoid statutory interpretations that

8

make any part of the statute superfluous." *Colin*, 2025 WL 3645176, at *4 (citation modified); *see also Gonzalez Cortes*, 2026 WL 147435, at *3 (same).

The undersigned similarly interprets the term "seeking admission" to narrow the category of "applicants for admission" subject to mandatory detention. "'Seeking' means 'asking for' or 'trying to acquire or gain.'    Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking." *Lepe v. Andrews*, No. 25-CV-01163, 2025 WL 2716910, at *5 (E.D. Cal. Sep. 23, 2025).  "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States.   The use of the present participle in § 1225(b)(2)(A) implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Caballero v. Baltazar*, No. 25-CV-03120, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (citation modified); *accord Colin*, 2025 WL 3645176, at *4-5.  As such, the undersigned best understands mandatory detention under § 1225(b)(2)(A) to apply to arriving noncitizens actively seeking admission at or near the border or port of entry.

This analysis is not impacted by Petitioner's application for asylum. *See, e.g.*, *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at *1 (W.D. Okla. Jan. 20, 2026) (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum").

9

Further, giving effect to each clause and word of a statute includes an analysis of the statute's title. "A title is especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation modified). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added). Use of the term "arriving" indicates the section governs entrance of noncitizens to the United States. Section 1225 is also located between two other sections dealing with arrivals of noncitizens: § 1224 is titled "Designation of ports of entry for aliens arriving by aircraft," and § 1225a is titled "Preinspection at foreign airports."

The undersigned's reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to let noncitizens into the country. The subheading for § 1225(b)(2) reads "Inspection of Other Aliens," reinforcing the idea that it applies to those coming in, not already present. Section 1225(d) is labeled "Authority Relating to Inspections" and outlines the various powers of immigration officers to search and detain vessels and "arriving aliens. Further, § 1225(a)(2) and § 1225(a)(3) address "stowaways" and "crewmen," terms that likewise suggest arrival at a border or port of entry.

Finally, § 1225's place in the overall statutory scheme supports the undersigned's reading. *See King*, 576 U.S. at 486 (holding that courts are meant to "construe statutes, not isolated provisions" (citation modified)). That Congress separated removal of "arriving aliens" from its more general section for "Apprehension and detention of aliens" in § 1226, implies that Congress enacted § 1225 for a specific, limited purpose. This interpretation is also consistent with the Supreme Court's guidance in *Jennings* that § 1225(b)(1) and (b)(2)

"authorizes the Government to detain certain aliens seeking admission into the country" and § 1226(a) and (c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." 583 U.S. at 289. That delineation by Congress aligns with the Supreme Court's recognition that "the distinction between an alien who has effected entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693 (citation modified).

After considering the text and statutory framework, the undersigned concludes a noncitizen like Petitioner is not an "applicant for admission" who is "seeking admission" under § 1225(b)(2)(A). He has resided in the United States for years and was not arrested when attempting to cross the border or enter the country. "As § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [the petitioner], because he has already been residing in the United States for several years." *Colin*, 2025 WL 3645176, at *5 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025)).

### 2. Legislative history and recent amendment of § 1226

The legislative history and recent amendment of § 1226 also indicate that section applies to noncitizens who previously entered without inspection and were residing in the United States when apprehended.

First, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which outlines the current statutory scheme, "did not serve as a complete replacement of the pre-IIRIRA immigration scheme. As noted by the House of Representatives' Report relating to the changes, '[§ 1226(a)] restates the current provisions

in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States.'  H.R. Rep. No. 104-469, at 229."  *Gonzalez Cortes*, 2026 WL 147435, at \*6; *see also Urbina Garcia*, 2025 WL 3516071, at \*4 (noting "when Congress enacted the IIRIRA, it did not fully disrupt the old system, including the system of detention and release on bond") (citation modified).  In fact, after passage of the IIRIRA, the Department of Justice issued implementing regulations and explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."  *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified).

Further, Congress' recent amendment to § 1226 renders the government's interpretation of § 1225(b)(2)(A) superfluous.  Last year, Congress amended § 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).  The Laken Riley Act added § 1226(c)(1)(E), which mandates detention for noncitizens who

- are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (misrepresentation), or § 1182(a)(7) (lacking valid documentation) and

- have been arrested for, charged with, or convicted of certain crimes.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

Considering § 1182(a)(6)(A)(i) specifically refers to "alien[s] present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the new statutory exception would be superfluous if § 1225(b)(2) already authorized their mandatory detention. That is, because an "alien present in the United States" without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." (citation modified)). District courts have noted that adoption of contrary interpretation "would largely nullify a statute Congress enacted this very year and must be rejected." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (citation modified); *see also Gonzalez Cortes*, 2026 WL 147435, at *6 (finding by Judge Palk that "the enactment of the Laken Riley Act lends further support for the application of § 1226 in these circumstances").

### 3. The BIA's current and historical interpretations of § 1225(b)(2)(A) and § 1226(a)

On September 5, 2025, the Board of Immigration Appeals ("BIA") ruled that an immigration judge lacks authority to consider a bond request for any person who is present in the United States without admission, treating such person as an applicant for admission who is seeking admission and subject to mandatory detention under § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025). The BIA in *Hurtado*

13

concluded that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United States for longer than two years without apprehension. *Id*. at 229.

The undersigned reaches a different conclusion from the BIA's statutory analysis in *Hurtado*. Notably, this Court is not bound by the BIA's interpretation of § 1225(b)(2)(A). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("Courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." (citation modified)). *Hurtado* reflects a sharp pivot from longstanding immigration practice and policies. For almost three decades, most noncitizens who entered without inspection and apprehended while living in the United States were placed in standard removal proceedings and received bond hearings, unless subject to an exception. Decades of ICE practices lend support to Petitioner's entitlement to a bond hearing under § 1226(a) "because the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Loper Bright Enters.*, 603 U.S. at 386 (citation modified). Respect for Executive Branch interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

Accordingly, the government's historical application of immigration laws also supports the undersigned's conclusion that § 1226(a) applies to Petitioner. Again, this analysis aligns with courts that have recently addressed this issue. *See Gonzalez Cortes*, 2026 WL 147435, at *7 (finding by this Court that "while Respondents claim that their decision to use § 1225(b)(2) is discretionary," "Respondents ignore that such a decision conflicts with nearly thirty years of past practices"); *see also, e.g., Jiménez García v.*

*Raybon*, No. 25-cv-13086, 2025 WL 2976950, at \*4 (E.D. Mich. Oct. 21, 2025) (finding "ICE's decision to upend 30 years of reasoned statutory interpretation is not persuasive").

### 4.   Petitioner's previous release pursuant to § 1226

Petitioner alleges he was "previously released on an order of supervision." Pet. at 2. The undersigned presumes, though, he was released from ICE custody years ago on bond under § 1226(a)—not an order of supervision—because § 1226(a) allows for release on bond for noncitizens in removal proceedings who do not have a final order of removal. *Jennings*, 583 U.S. at 287-89, 306.

In addition to the foregoing statutory analysis, Petitioner's current detention should be governed by § 1226(a) because he was arrested in the United States and previously released under § 1226(a). *See, e.g.*, *Bello Chacon v. Hermosillo*, No. 25-CV-02299, 2025 WL 3562666, at \*2 (W.D. Wash. Dec. 12, 2025) (finding petitioner's prior release under § 1226 indicates he "was—and continues to be—subject to discretionary detention under § 1226"); *Chen v. Soto*, No. CV 25-17198, 2025 WL 3527239, at \*3 (D.N.J. Dec. 9, 2025) (granting habeas relief and ordering respondents to provide a bond hearing for petitioner previously released pursuant to § 1226 because previously treating petitioner under § 1226 "defeats respondents' new position that a different statutory provision applies").

### 5.   Conclusion

The undersigned agrees with this Court, Chief Judge DeGiusti, Judge Palk, Judge Jones, Judge Heaton, and the myriad district courts that have recently applied § 1226(a) to govern detention of noncitizens like Petitioner. The five above-referenced Judges in this District have now ruled in many habeas challenges that § 1226(a) governs petitioners who

are already in the country.  Notably, several Judges in the District have further held because § 1225(b)(2)(A) was "unambiguous" in support of the petitioner's interpretation, the Judges did not need to address the statute's title, legislative purpose, historical interpretation, or the Laken Riley Act.  *Morocho*, 2026 WL 36452, at *3 n.1; *Valdez*, 2025 WL 3709021, at *3 n.1; *Escarcega*, 2025 WL 3243438, at *3.  Judge Jones noted "even if the Court did find § 1225(b)(2)(A) ambiguous, the section's legislative purpose and historical interpretations do not support Respondents' position."  *Escarcega*, 2025 WL 3243438, at *3 n.5 (citation modified).  Judge Palk found the plain language, legislative history, and past practices all support a finding that "Petitioner's detention is not governed by §1225(b)(2)."  *Gonzalez Cortes*, 2026 WL 147435, at *7.  Judge Dishman and Judge Wyrick have adopted Respondents' position and applied § 1225(b)(2)(A).  *See Gutierrez Sosa*, 2026 WL 36344, at *3; *Alvarado Montoya*, 2025 WL 3733302, at *6-12.

Other district courts in the Tenth Circuit have routinely applied § 1226(a) in recent habeas challenges akin to Petitioner's.  *See, e.g.*, *Aguilar Tanchez v. Noem*, No. 25-CV-1150, 2026 WL 125184, at *10 (D. Utah Jan. 16, 2026) (holding petitioner's detention is governed by § 1226(a) and not § 1225(b)(2)); *Leonardo G.Z. v. Noem*, No. 25-CV-0600, 2025 WL 3755590, at *10 (N.D. Okla. Dec. 29, 2025) (applying § 1226(a) after "having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens"); *Cruz Valera v. Baltazar*, No. 25-CV-03744, 2025 WL 3496174, at *3 (D. Colo. Dec. 5, 2025) (same); *Pu Sacvin v. De Anda-Ybarra*, No. 25-cv-1031, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (same).  More generally, an "overwhelming,

16

lopsided majority" of district courts around the country have applied § 1226(a) to govern detention for noncitizens like Petitioner. *Mercado v. Francis*, --- F. Supp. 3d ---, 2025 WL 3295903, at \*4 (S.D.N.Y. Nov. 26, 2025) (noting DHS's interpretation of § 1225 and § 1226 "has been challenged in at least 362 cases in federal district court" and "challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States").

Two appellate courts have weighed in on this issue. The Seventh Circuit Court of Appeals ruled on a motion to stay pending appeal that based on a "preliminary record" the respondents "are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025). The Seventh Circuit concluded Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of 'applicants for admission'] but elected not to do so." *Id.* at 1061. This Court has found "the Seventh Circuit's analysis is apt." *Valdez*, 2025 WL 3709021, at \*2; *see also Maldonado v. Noem*, No. CIV-25-1379-J, 2026 WL 160950, at \*1 (W.D. Okla. Jan. 21, 2026) (finding Seventh Circuit analysis to be "persuasive"). In contrast, the Fifth Circuit Court of Appeals recently applied § 1225 to a similar habeas challenge, agreeing with Respondents' position based on "the relevant provisions and structure of the [INA], the statutory history, and Congressional intent." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502-08 (5th Cir. 2026).

Finally, the undersigned has considered Respondents' citations to cases adopting their position that noncitizens like Petitioner fall under § 1225(b)(2)(A) despite residing in the United States, including the Fifth Circuit's decision and Judge Dishman's and Judge Wyrick's recent decisions. *See* Resp. at 2 (collecting cases); *Buenrostro-Mendez*, 166 F.4th at 502-08; *Gutierrez Sosa*, 2026 WL 36344, at *3; *Alvarado Montoya*, 2025 WL 3733302, at *6-12. For the reasons previously discussed, the undersigned respectfully disagrees with the statutory interpretation of these decisions about who is an "applicant for admission" *and* "seeking admission" under § 1225(b)(2)(A). The undersigned instead agrees with this Court, Chief Judge DeGiusti, Judge Palk, Judge Jones, Judge Heaton, and the overwhelming number of other courts that recently addressed this question.

After carefully analyzing the statute's text, structure, and history, along with longstanding immigration practices and Petitioner's prior release under § 1226(a), the undersigned recommends that the Court apply § 1226(a) to govern Petitioner's current detention. As such, Petitioner is entitled under § 1226(a) to a prompt individualized bond hearing before a neutral IJ. The Court should grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within five business days or otherwise release him if he does not have a lawful bond hearing within that period.

### C.    The Court should decline to address Petitioner's due process claim.

Petitioner also argues that his continued detention without a bond hearing violates his rights to due process. Pet. at 6. If the Court grants Petitioner's requested relief for a bond hearing under § 1226(a), the undersigned recommends that the Court decline to decide the merits of the due process claim based on his continued detention. *See, e.g.,*

18

*Colin*, 2025 WL 3645176, at *6 n.3 ("Because the Court grants the relief the Petitioner requests based on the applicability of 8 U.S.C. § 1226(a), the Court declines to decide the merits of Petitioner's due process claim."); *Valdez*, 2025 WL 3709021, at *3 n.2 (same).

## V.    <u>Recommendation and Notice of Right to Object</u>

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.   The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objection must be filed not later than **March 24, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond to the other party's objections, such response must be filed not later than **March 27, 2026**. *See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**ENTERED** this 17th day of March, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE